UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Monarch Nut Company, LLC et al.,

                                 Plaintiffs,

      v.

Goodnature Products, Inc. et al.,

                                 Defendants.

**Decision and Order
and
Supplemental Report and
Recommendation**

14-CV-1017S

## I. INTRODUCTION

Plaintiffs Monarch Nut Company, LLC and Munger Farms ("Monarch" collectively), and their owner, Kable Munger, sued defendants Goodnature Products, Inc., Goodnature National, Inc., and Goodnature Inex, LLC ("Goodnature" collectively); and Goodnature's CEO, Dale Wettlaufer ("Wettlaufer"), alleging various claims of contractual breach and fraud in connection with the purchase of infusion and drying equipment that would prepare sweetened dried blueberries.[1] On September 19, 2018, the Court issued a Report and Recommendation that addressed a number of dispositive motions from the parties. (Dkt. No. 120.) At the end, the Court recommended that the following claims or counterclaims proceed to trial:

    1)    Monarch's second claim against Goodnature and Wettlaufer for fraudulent inducement to enter the Licensing Agreement;

    2)    Monarch's fifth claim against Goodnature and Wettlaufer for breach of contract/breach of express warranties; and

    3)    All of Goodnature and Wettlaufer's counterclaims against Monarch.

(*Id.* at 56.)

---

[1] An additional defendant, CPM Wolverine Proctor, has since been dismissed from the case.

During objections, defendants asked District Judge William Skretny for clarification on a gap that they perceived in this Court's analysis. Specifically, the first recommendation above, in defendants' view, did not state explicitly that incidental, consequential, and lost profit damages were prohibited by the way in which the Court interpreted the Licensing Agreement in question. Defendants inferred that "[b]ased on this plain and unambiguous language, the Report and Recommendation includes granting Defendants' motion for summary judgment on Plaintiffs' claims for incidental, consequential and/or lost profits damages. For purposes of clarity, Defendants ask that the Court confirm Defendants' understanding of the plain language in the Report and Recommendation." (Dkt. No. 122 at 8.) Among other objections of their own, plaintiffs disagreed that any clarification would be necessary:

> This is unambiguous: there is nothing to clarify. If implemented, the Court's Recommendation would limit Plaintiffs Second Cause of Action to one for fraud in the inducement, and afford Plaintiffs all remedies available for that cause of action, and leave the Fifth (for Breach of Warranties) unaltered, since Defendants made no motion as to the Fifth Cause of Action.

(Dkt. No. 124 at 8.) On January 18, 2019, Judge Skretny adopted the Report and Recommendation in its entirety and referred any need for clarification back to this Court. (Dkt. No. 131.)

On January 22, 2019, the Court issued an electronic text order in an attempt to resolve the matter quickly. (Dkt. No. 132.) The Court explained that it "intended Monarch to have an ordinary claim for fraudulent inducement under New York law, limited only by 1) whatever damages are typically available for such a claim under New York law; and 2) whatever proof (for Rule 50 purposes) emerges at trial by the time Monarch rests." (*Id.*) If that clarification proved insufficient then the Court invited the parties to submit brief letters that explained the matter further.

On January 24 and 28, 2019, the parties accepted the Court's invitation and submitted additional explanations. Defendants began by listing eight points that they asserted in their

2

dispositive motions, the last three of which were at the center of their request for additional

clarification:

> 6. Plaintiffs disclaimed incidental and consequential damages.
>
> 7. Plaintiffs are not entitled to recover lost profit damages.
>
> 8. Plaintiffs are not entitled to recover expectation damages on their fraud claim.

(Dkt. No. 133 at 1.) Defendants then asserted that the Court did not explicitly declare (or

recommend to Judge Skretny) that their motion to bar plaintiffs from incidental, consequential, lost

profit, and expectation damages was denied. (*Id.* at 2.) On this point, defendants read the Report

and Recommendation this way:

> Rather, the Court determined that the Contract is fully integrated, governed by New York law and enforceable. [Dkt. No. 120 at pp. 7, 30–34.] Because the Contract is enforceable, the contractual damages disclaimer in the Contract must be given effect. Accordingly, with respect to the fifth cause of action for breach of contract, Plaintiffs are not entitled to recover any incidental or consequential damages. Based on a review of the Report and Recommendation, that is what the Court recommended. *We ask the Court to confirm that the Report and Recommendation granted Defendants' motion for summary judgment on the disclaimer of incidental and consequential damages.*

(*Id.* at 2–3 (emphasis in original).) From there, defendants asserted that expectation damages for lost

profits cannot be recovered on a fraud claim under New York law. Defendants concluded with two

other requests for clarification:

> We ask the Court to confirm that the Report and Recommendation granted Defendants' motion on the Plaintiffs' inability to recover expectation damages on their fraudulent inducement claim.
>
> We ask the Court to confirm that the Report and Recommendation granted Defendants' motion on the inability of Plaintiffs to recover lost profits damages on any claim.

(*Id.* at 3.) Looking ahead to an eventual trial, defendants were candid about why they wanted more

explicit clarifications than the Court had given them up to this point:

3

> Defendants moved for summary judgment on these damages issues because allowing the evidence to be presented at trial would be highly prejudicial. For example, Plaintiffs intend to call a purported damages expert to opine that Plaintiffs suffered approximately $71 million in lost profits damages because of Defendants' fraud. [Dkt. No. 79-20, p. 8.] As set forth in Defendants' motion, such damages are unavailable. [Dkt. No. 79-34, p. 30.] Allowing an expert to opine on damages that cannot be awarded would cause great confusion. Indeed, in the absence of summary judgment, this testimony will be the subject of a motion *in limine* to disqualify the purported expert because her opinion conflicts with controlling New York law.

(*Id.*) For their part, plaintiffs saw no need to clarify any aspect of their claim for fraudulent inducement:

> By insisting that "integration" limits Monarch's damages, counsel ignores Plaintiffs' Opposition to Defendants' Motion and this Court's reference to applicable New York law: "New York law also permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause." (Report and Recommendation, p. 52). "[S]uch a general merger clause is generally insufficient to bar parol evidence of a fraudulent misrepresentation." (*Ibid.*) Your Honor concluded that "[t]he second claim should thus survive to the extent that it alleges fraudulent inducement to sign the Licensing Agreement." (*Id.* at p. 53; Section IV, p. 56).

(Dkt. No. 134 at 2.)

## II. DISCUSSION

As a preliminary matter, the Court has decided that a narrowly focused writing will avoid the need for further proceedings or a an extensive supplemental recommendation. A narrowly focused writing can fit under Rule 60(a), which allows a court to correct "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a). "Rule 60(a) allows a court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement. Rule 60(a) allows for clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity, if necessary for

4

enforcement . . . this broad rule does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect. Rather, the interpretation must reflect the contemporaneous intent of the district court as evidenced by the record." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (ellipsis in original) (internal quotation marks and citations omitted).

As for the substance of defendants' request, one omission from the Report and Recommendation should be addressed briefly. Specifically, when the Court assessed the impact of disclaimer language on several of plaintiffs' claims, it inadvertently omitted the impact on the fifth claim of the amended complaint because defendants were not attacking the substantive core of that claim. Although the parties have referred to plaintiffs' fifth claim in the amended complaint colloquially as "breach of contract," plaintiffs officially described it as a breach of express written warranties against all defendants. (Dkt. No. 59 at 19.) The fifth claim has been dismissed as against former defendant CPM Wolverine Proctor because of an express disclaimer of warranties in the contract known as EL10515 Revision 6 or "Revision 6." (Dkt. No. 120 at 11–12, 43.) Plaintiffs' contract with the remaining defendants, known as "Quotation 1940," contained nearly identical language. (*Id.* at 7.) The Court decided explicitly in the Report and Recommendation that the disclaimer language of Quotation 1940 led to the demise of the sixth claim for breach of implied warranties because that claim in its entirety went beyond the remedies available. (*Id.* at 53.) The Court's contemporaneous intent was that the disclaimer language of Quotation 1940 similarly would truncate the fifth claim against the remaining defendants to the extent that plaintiff sought any damages beyond "(I) the repair or replacement of the equipment on which the liability is based; or (II) at Seller's option, the refund to Buyer of the amount paid by Buyer to Seller for said

5

equipment." (*Id.* at 7; Dkt. No. 94-3 at 83.)  That contemporaneous intent is entirely consistent with and a necessary implication of all of the contractual analysis in the Report and Recommendation, which the Court incorporates here by reference for the sake of brevity.  The above clarification is the extent of the clarification that the Court will provide for plaintiffs' fifth claim, one of two that they have left in this case.  Plaintiffs have the right under 28 U.S.C. § 636 and Rule 72 if they believe that this part of the Court's writing is dispositive in nature and requires review from Judge Skretny.

With respect to plaintiffs' second claim for fraudulent inducement, the Court is still not entirely certain what needs to be clarified.  The Court has already said that plaintiffs, for their claim of fraudulent inducement, will be allowed to pursue "whatever damages are typically available for such a claim under New York law."  To the extent that defendants are asking what that means, they have partly answered their own question by asserting that "[t]here is simply *no* dispute that lost profit damages *cannot* be recovered on the second cause of action." (Dkt. No. 133 at 3.)  If that be true then the Court's commitment to following New York law has left nothing unaddressed.  Unless the parties want to consent to try the case before this Court, the Court is reluctant to add commentary to a now-adopted Report and Recommendation that it had not contemplated earlier.  The Court additionally is reluctant to address defendants' apparent real concern—potential prejudice from expert testimony about large sums of damages—in any way that would encroach on Judge Skretny's right to manage motions *in limine* and trial evidentiary questions as he sees fit.

The most that the Court is willing to do with respect to the second claim is to review in more detail the principles of New York law that it reviewed when preparing the Report and Recommendation.  As now confirmed by Judge Skretny, plaintiffs have a claim in this case for fraudulent inducement to enter the Licensing Agreement in question.  "Any contract induced by fraud as to a matter material to the party defrauded is voidable." *Adams v. Gillig*, 92 N.E. 670, 671

6

(N.Y. 1910). "This form of fraud is usually based on facts occurring prior or subsequent to the execution of a contract which tend to demonstrate that an agreement, valid on its face and properly executed, is to be limited or avoided. When an opponent of a contract alleges fraud in the inducement, whether as an affirmative defense or by way of a counterclaim seeking rescission, he must sustain the burden of persuasion. That burden of proving fraud in the inducement, or a cause of action seeking rescission on that ground, requires that the proof be by most satisfactory evidence, which we interpret to be clear and convincing evidence rather than only a fair preponderance of the credible evidence. We have also accepted the principle that innocent misrepresentations are sufficient to make a contract voidable." *Mix v. Neff*, 473 N.Y.S.2d 31, 33–34 (N.Y. App. Div. 1984) (internal quotation marks and citations omitted).

"A person who has parted with consideration upon a contract induced by fraud has three remedies open to him. He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract . . . . He may bring an action in equity to rescind the contract and in that action have full relief . . . . Lastly, he may retain what he has received and bring an action at law to recover the damages sustained." *Sager v. Friedman*, 1 N.E.2d 971, 973 (N.Y. 1936) (ellipses in original) (internal quotation marks and citations omitted). Out of countless examples, one example of indemnity for fraudulent inducement is "the costs to locate the goods, the costs to repurchase the goods, storage fees and disposal costs, and under the first counterclaim for the balance remaining due on the purchase price for the goods sold and delivered." *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004–05 (N.Y. 1986). New York's Pattern Jury Instructions elaborate further on the monetary damages available when plaintiffs can prove a claim for fraudulent inducement:

> A fraud complaint must allege facts from which actual damages may be inferred. Allegations that, at best, suggest the plaintiff might suffer injury depending

7

on defendants' future actions are not sufficient. Nominal damages, which are available in contract actions, are not available in tort actions that, like those alleging fraud, require actual harm as an element of the tort.

The plaintiff may recover only the actual pecuniary loss sustained as a result of the wrong. This principle is known as the "out-of-pocket" rule.

Under the out-of-pocket rule, damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained. This measure of damages is different from the contract measure, which entitles the injured party to the benefit of the bargain including, in some cases, the profits that would have been derived from the performance of the contract. In a fraud action, there can be no recovery of profits that would have been realized in the absence of fraud, and recovery is denied where it would leave plaintiff in a better position than plaintiff would have been absent the fraud.

Out-of-pocket damages are calculated in three steps. The plaintiff must first show the actual value of the consideration received; next, the plaintiff must show that the defendant's fraudulent statements directly caused him or her to deliver consideration that was greater than the value of received consideration; last, the out-of-pocket damages are the difference between the value of the received consideration and the value of the consideration given.

Neither the loss of an alternative contractual bargain nor the payment of taxes couched as consequential damages may be recovered in a fraud action where the former damages are undeterminable and speculative and recovery of the latter would put the plaintiff in a better position than it would have been but for the alleged fraud.

* * * *

Damages for emotional distress are not recoverable in fraud.

Punitive damages are not recoverable in the ordinary fraud and deceit case, but may be recovered when the fraud is gross and involves high moral culpability, or when the wrong complained of rises to such a level of wanton dishonesty as to imply a criminal indifference to civil obligations.

* * * *

The burden is on plaintiff to prove a proper basis for damages, but an uncertainty regarding the amount of damages does not preclude recovery where damages can be measured by some practical, just means.

N.Y. Pattern Jury Instructions—Civil § 3:20 (citations omitted).

The Court trusts that the principles quoted above will guide the parties through whatever motions *in limine* might be necessary as they prepare for trial before Judge Skretny.

## III. CONCLUSION

The Court clarifies its prior recommendation and text order as explained above.

SO ORDERED.

                                                                              __/s Hugh B. Scott_____
                                                                                 Hon. Hugh B. Scott
                                                                                 United States Magistrate Judge

DATED: February 5, 2019